DECISION AND JUDGMENT ENTRY
{¶ 1} Steven Pierson[1], Code Enforcement Director for the City of Athens, appeals the Athens County Common Pleas Court's decision granting Gregory Chapman attorney's fees under R.C. 733.61. Pierson contends the court erred in awarding attorney's fees because Chapman would not have been successful in obtaining a writ of mandamus under R.C. 733.59. Pierson also argues the court erred in finding that a final judgment was entered in Chapman's favor andthat Chapman's action conveyed a public benefit. We conclude the court did not abuse its discretion when it awarded Chapman attorney's fees. The parties' agreed entry resolved the merits of Chapman's case, making it unnecessary for the trial court to determine if mandamus was appropriate. Moreover, the agreed entry constitutes a final judgment in Chapman's favor since it grants the relief he ultimately sought — closure of The Elbow Room. Finally, the evidence in the record supports a finding that Chapman's action provided a public benefit. Next, Pierson argues the court violated Loc.R. 20.01(B) and (C) when it converted the pre-trial conference into an evidentiary hearing. Although Pierson opposed converting the pre-trial conference into an evidentiary hearing, he did not argue, in the trial court, that the conversion would violate local court rules. Thus, Pierson has waived this argument for purposes of appeal. Finally, Pierson argues the court made five erroneous evidentiary rulings during the hearing. Four of the rulings Pierson challenges concern the relevancy of a line of questioning or the relevancy of a particular witness's testimony. With regard to three of the rulings, we conclude the trial court did not abuse its discretion in admitting the evidence because it is relevant to whether Chapman's action provided a public benefit or whether he had good cause to believe his allegations were well-founded. As for the fourth ruling, we conclude that any error in admitting the evidence is harmless since the trial court's journal entry indicates that the court did not rely on the evidence in making its decision. The fifth ruling Pierson challenges is the trial court's decision allowing Chapman to re-open his case to present the testimony of an additional witness. We conclude the trial court did not abuse its discretion when it permitted Chapman to re-open his case since Pierson suffered no prejudice.
 {¶ 2} In December 2000, Pierson approved a zoning certificate authorizing the installation of a restaurant at 128 W. Union St., Athens, Ohio. 128 W. Union St. is located in a section of Athens that is zoned as a neighborhood business district (B-1). According to the Athens City Code, eating and drinking establishments such as restaurants, cafes, soda fountains, and ice cream parlors are permitted in a B-1 district as long as they do not include entertainment or dancing and are not a drive-in restaurant. Athens City Code 23.04.05(A)(4).
 {¶ 3} Subsequently, an establishment named "The Elbow Room" opened at 128 W. Union St. Although the zoning certificate indicated the establishment was to be a restaurant with alcohol sales incidental to the sale of food, The Elbow Room conducted business as a bar, primarily serving alcoholic beverages. Under the Athens City Code, bars are permitted in areas of the city zoned as downtown business districts (B-2). Athens City Code 23.04.06(A)(4). They are not permitted uses in a neighborhood business district (B-1).
 {¶ 4} In April 2001, Chapman, who owns residential rental properties adjoining 128 W. Union St., wrote a letter to Pierson informing him that The Elbow Room was conducting business as a bar rather than a restaurant. He also informed Pierson that the owners of The Elbow Room had erected a fence in front of the bar and constructed an outdoor "beer garden" in the rear of the property, both of which violated the zoning code. Chapman delivered his letter to Pierson's office on May 1, 2001.
 {¶ 5} On May 24, 2001, Chapman sent a certified letter to the Athens City Law Director. In that letter, Chapman asked the Law Director to contact Pierson and advise him to enforce the zoning code concerning The Elbow Room's alleged violations. The letter also urged the Law Director to file a mandamus action to compel Pierson to act if he failed to do so. Finally, the letter indicated that if Pierson failed to act and the Law Director refused to file the mandamus action, Chapman would file a taxpayer action under R.C. 733.59.
 {¶ 6} In late July, Pierson sent a letter to the owners of The Elbow Room informing them that their fence, outdoor beer garden, and outdoor sun umbrellas containing vendor advertising violated the zoning code. In addition, Pierson requested information regarding the types of services The Elbow Room provided in order to determine whether it was a restaurant. The letter gave the owners of The Elbow Room thirty days to supply the information.
 {¶ 7} In response, the owners of The Elbow Room filed an appeal with the Board of Zoning Appeals. The Board scheduled a hearing on the appeal for September 11, 2001, but the owners of The Elbow Room did not appear at the hearing, having filed a request for a continuance earlier that day. Therefore, the Board continued the hearing until September 26, 2001.
 {¶ 8} In the meantime, on September 20, 2001, Chapman filed a complaint against Pierson and the owners of The Elbow Room. Chapman's complaint contained four counts: (1) a request for an injunction ordering the owners of The Elbow Room to cease operation, (2) a taxpayer suit seeking a writ of mandamus ordering Pierson to enforce the zoning code and close The Elbow Room, (3) an action to abate a nuisance, i.e., The Elbow Room, and (4) a declaratory judgment action asking the court to find that The Elbow Room is a bar and, therefore, operating in violation of the zoning code. Following Pierson's letter declaring The Elbow Room in violation of the zoning code, Chapman amended his complaint to add a fifth count, which alleged that The Elbow Room was operating in violation of the zoning laws and an injunction should be issued ordering its closure.
 {¶ 9} On September 21, 2001, Pierson sent a letter to the owners of The Elbow Room informing them that a decision would be made on September 28, 2001, regarding whether The Elbow Room constituted a bar or a restaurant. On October 1, 2001, Pierson informed the owners of the Elbow Room that they were operating an establishment in violation of the zoning code and ordered them to stop the non-permitted use.
 {¶ 10} On October 5, 2001, Chapman, Pierson, and the owners of The Elbow Room filed an agreed judgment entry. In that entry, the owners of The Elbow Room stipulated that they were not in compliance with the zoning code as indicated in Pierson's letter from October 1, 2001. The parties agreed that the original zoning certificate issued by Pierson in December 2000 would be revoked. Moreover, the parties agreed that a permanent injunction would be issued closing The Elbow Room.
 {¶ 11} The parties' entry also provided that Chapman's taxpayer action would proceed on the issue of attorney's fees. At the close of the hearing on the parties' agreed entry, Chapman requested that the court hold an evidentiary hearing on the issue of attorney's fees later that same day. The court denied the request since Pierson had not yet had an opportunity to file his answer to Chapman's complaint. In mid-October, Chapman filed a motion for costs and attorney's fees and requested an evidentiary hearing on the issue. Pierson filed his answer on October 25, 2001.[2]
 {¶ 12} Subsequently, the court scheduled a pre-trial conference for January 28, 2002. In December 2001, Chapman filed a motion requesting that the pre-trial conference be converted into an evidentiary hearing. More than one month later, after the time for responsive briefs had passed, Pierson filed his brief in opposition to Chapman's motion. The trial court granted Chapman's motion and conducted an evidentiary hearing. In June 2002, the trial court awarded Chapman attorney's fees in the amount of $11,259.77. Pierson now appeals, raising the following assignments of error: "ASSIGNMENT OF ERROR NO. 1 — The trial court erred in determining that the plaintiff/appellee satisfied the requirements of ORC § 733.59 and ORC § 733.61 in determining that a writ of mandamus would like to compel the code enforcement director to enforce the city code. ASSIGNMENT OF ERROR NO. 2 — The trial court erred in determining that judgment was entered in favor of the plaintiffs' (sic) on the mandamus action thereby entitling plaintiff's (sic) to an award of attorney's fees. ASSIGNMENT OF ERROR NO. 3 — The trial court erred in finding that the plaintiff/appellees action bestowed a public benefit. ASSIGNMENT OF ERROR NO. 4 — The trial court violated the local rules of court and by granting the request of plaintiff/appellants (sic) to convert the pre-trial conference into an evidentiary hearing thus depriving defendant/appellee (sic) the opportunity to properly prepare and respond to the various allegations contained in the complaint. ASSIGNMENT OF ERROR NO. 5 — The trial court erred in making various rulings during the "evidentiary hearing" to the detriment of defendant/appellant when it expanded the scope of the hearing beyond the complaint, allowed irrelevant testimony, and allowed the plaintiffs to "re-open" their case after having rested and call an additional witness."
 {¶ 13} For the sake of clarity, we will address Pierson's first three assignments of error together. Here, Pierson challenges the trial court's award of attorney's fees.
 {¶ 14} R.C. 733.58 authorizes the city law director to seek a writ a mandamus if "an officer or board of a municipal corporation fails to perform any duty expressly enjoined by law or ordinance." Under R.C. 733.59, a taxpayer may make a written request asking the city law director to seek a writ of mandamus. If a taxpayer makes a written request and the city law director fails to seek a writ of mandamus, R.C. 733.59 permits the taxpayer to initiate suit in his own name on behalf of the municipal corporation. If the taxpayer initiates suit in his own name, R.C. 733.61
provides: "If the court hearing a case under section 733.59 of the Revised Code is satisfied that the taxpayer had good cause to believe that his allegations were well founded, or if they are sufficient in law, it shall make such order as the equity of the case demands. In such case the taxpayer shall be allowed his costs, and, if judgment is finally ordered in his favor, he may be allowed, as part of the costs, a reasonable compensation for his attorney."
 {¶ 15} The decision whether to award attorney's fees in a successful taxpayer action is committed to the trial court's discretion.State ex rel. Miles v. McSweeney, 96 Ohio St.3d 352, 2002-Ohio-4455,775 N.E.2d 468, at ¶ 29, citing State ex rel. Commt. for CharterAmendment Petition v. Avon (1998), 81 Ohio St.3d 590, 595, 693 N.E.2d 205. See, also, State ex rel. DeBrosse v. Cool, 87 Ohio St.3d 1, 7,1999-Ohio-239, 716 N.E.2d 1114; Hubbard ex rel. Creed v. Sauline,74 Ohio St.3d 402, 407-408, 1996-Ohio-174, 659 N.E.2d 781. In exercising its discretion, the court considers "whether the case resulted in a public benefit and if [defendants] had a reasonable basis to support their position." Miles, supra. The term "abuse of discretion" connotes more than error of judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Wilmington Steel Product, Inc. v. ClevelandElec. Illum. Co. (1991), 60 Ohio St.3d 120, 122, 573 N.E.2d 622. When applying the abuse of discretion standard of review, we are not free to merely substitute our judgment for that of the trial court. In re JaneDoe 1 (1991), 57 Ohio St.3d 135, 137-38, 566 N.E.2d 1181, citing Berk v.Matthews (1990), 53 Ohio St.3d 161, 169, 559 N.E.2d 1301.
 {¶ 16} Initially, Pierson contends the court erred in awarding attorney's fees since Chapman's taxpayer action would not have been successful. He contends the court erred in determining that a writ of mandamus ordering him to enforce the zoning code would have been appropriate. In response, Chapman argues the agreed judgment entry resolved the case on its merits, leaving only the issue of attorney's fees. He contends the trial court did not determine that an order of mandamus would be appropriate because it was no longer necessary for the court to do so once the parties entered into the agreed judgment entry. He contends Pierson waived any argument relating to the appropriateness of the taxpayer action by entering into the agreed entry.
 {¶ 17} We conclude the agreed entry entered into by Pierson, Chapman, and the owners of The Elbow Room determined the merits of the case, including the taxpayer claim. At the time the parties entered into the agreed judgment entry, all five counts of Chapman's complaint remained pending. In the judgment entry, the parties agreed to a permanent injunction closing The Elbow Room. The owners of The Elbow Room expressly accepted Pierson's decision that they were in violation of the zoning code and agreed not to appeal the decision. At the end of the entry, the court dismissed Chapman's nuisance claim. With respect to Chapman's taxpayer claim, the entry states: "The taxpayer's action, Count Two of Plaintiffs' Complaint, shall proceed forward against Defendant Steven H. Pierson, Code Director of the City of Athens on the question of payment of attorney fees incurred by Plaintiffs pursuant to Ohio Revised Code Section 733.61."
 {¶ 18} Although Pierson argues the agreed entry did not resolve the merits of the taxpayer claim, the entry's language contradicts his argument. According to the entry, Chapman's taxpayer claim was to proceed "on the question of payment of attorney fees incurred by Plaintiffs pursuant to Ohio Revised Code Section 733.61." (Emphasis added.) This language indicates that the merits of the taxpayer action had been resolved, for if the merits had not been resolved, the entry would permit the entire taxpayer action to proceed forward. Instead, the entry indicates that the taxpayer action will proceed on the issue of attorney's fees only. Moreover, the merits of a taxpayer action must be resolved before a court can consider whether to award attorney's fees. Under R.C. 733.61, a court is only entitled to award attorney's fees when there has been a final judgment in the taxpayer's favor. Thus, by allowing Chapman's taxpayer claim to proceed solely on the issue of attorney's fees, the agreed entry recognized that the merits of the action had been resolved in Chapman's favor.
 {¶ 19} We find further support for our view in the trial court's final judgment entry, which indicates that the merits of the case were resolved by the agreed judgment entry filed October 5, 2001. According to the court's journal entry, the issue before the court was Chapman's request for attorney's fees.
 {¶ 20} Because the parties' agreed entry resolved the merits of the case, it was not necessary for the court to decide the mandamus issue. Thus, Pierson waived any further argument regarding whether mandamus was appropriate when he entered into the agreed entry. After the filing of the agreed entry, the only remaining issue to be resolved was whether Chapman should be awarded attorney's fees.
 {¶ 21} Pierson also argues the court erred in determining that final judgment was entered in Chapman's favor. He points out that neither the court nor the parties' entry granted Chapman the writ of mandamus he had requested.
 {¶ 22} Apparently, the court believed the parties were in agreement that final judgment had been entered in Chapman's favor. In its final judgment entry, the court states: "No party has argued that judgment was not entered in favor of the Plaintiffs. Clearly, the permanent injunction grants the relief sought: The Elbow Room business at 128 W. Union Street was closed." Pierson, however, claims that final judgment was not entered in Chapman's favor on the taxpayer action.
 {¶ 23} The parties' agreed journal entry indicates that Chapman's taxpayer action would proceed solely on the issue of attorney's fees. This implies that a final judgment was entered in Chapman's favor since the issue of attorney's fees is only relevant after a final judgment has been entered in the taxpayer's favor. See R.C. 733.61.
 {¶ 24} The ultimate goal of Chapman's lawsuit was the closure of The Elbow Room. Chapman achieved that goal when the parties entered into an agreed entry granting a permanent injunction closing The Elbow Room. Moreover, it appears Pierson's letter declaring The Elbow Room in violation of the zoning code played a role in the owners' decision to agree to a permanent injunction. In the agreed entry, the owners expressly accept Pierson's decision that they are in violation and immediately following that the court grants a permanent injunction closing The Elbow Room. We note that Pierson's letter, sent two weeks after Chapman filed his lawsuit, performs the very act Chapman sought to compel by his writ of mandamus, i.e., it declares The Elbow Room in violation of the zoning code and orders the owners to stop the non-permitted activity.
 {¶ 25} According to Pierson, Chapman did not receive a final judgment in his favor because the court did not issue a writ of mandamus. However, the court was not given an opportunity to determine whether mandamus would lie because the parties' agreed entry resolved the issue. Under R.C. 733.61 the court may award a taxpayer his attorney's fees "if judgment is finally ordered in his favor". Here, the parties' agreed entry granted final judgment in Chapman's favor.
 {¶ 26} Pierson also challenges the court's finding that Chapman's taxpayer action provided a public benefit. He argues the trial court never made a finding that the taxpayer action provided a public benefit. He also argues Chapman's action provided a private, not a public, benefit. He contends Chapman brought the action to protect his interests in his rental properties adjoining The Elbow Room.
 {¶ 27} In order for a taxpayer to recover attorney's fees in a successful taxpayer action, there must be a public benefit resulting from the litigation. DeBrosse, 87 Ohio St.3d at 7, citing Commt. For CharterAmendment Petition, 81 Ohio St.3d 590.
 {¶ 28} The trial court's final judgment entry indicates that Chapman argued that his action provided a public benefit. The court later indicates that it considered the arguments of the parties in determining that Chapman was entitled to attorney's fees. The court then acknowledges that the objective of a taxpayer action is to protect the interests of the general public and the municipal corporation. Although the court's entry does not contain an explicit finding that Chapman's action provided a public benefit, it does indicate that the court considered the argument when determining that attorney's fees were appropriate.
 {¶ 29} While it is true that Chapman's action may have provided a personal benefit, the record supports a finding that his action also provided a public benefit. The evidence indicates that The Elbow Room had no kitchen and was only licensed to serve hotdogs, nachos, popcorn, and chips. Despite this limited food-service license, The Elbow Room offered buffet style food on occasion. In addition, The Elbow Room's menu indicated it served food not permitted under its food-service license. Thus, Chapman's action provided a public benefit by closing an establishment that possibly posed a health risk. The evidence also indicates that the police received numerous reports of fights occurring at The Elbow Room. Thus, Chapman's action provided a public benefit by closing an establishment that endangered the public safety.
 {¶ 30} Moreover, the purpose of zoning ordinances is "to limit the use of land in the interest of the public welfare." Smith v. Juillerat
(1954), 161 Ohio St. 424, 119 N.E.2d 611, paragraph two of the syllabus. In fact, the Athens City Code expressly states that the zoning code was enacted "for the purpose of promoting the public health, safety, morals and general welfare; * * *." Athens City Code 23.01.01. If the purpose of the zoning code is to promote public safety and health, then Chapman's action, which resulted in enforcement of the zoning code, clearly provided a public benefit.
 {¶ 31} Finally, although not expressed as a separate assignment of error, Pierson appears to argue that attorney's fees are inappropriate because he was investigating the situation concerning The Elbow Room at the time Chapman filed his action. According to Pierson, he was unsure whether The Elbow Room was in violation of the zoning code since the code contained no definition of "restaurant" or "bar". He explains that throughout the summer he attempted to resolve this issue by consulting with the law director and The Elbow Room's attorney.
 {¶ 32} The trial court was not persuaded by this argument. In its journal entry, the trial court stated: "There is no evidence to suggest the Code Enforcement Office was going to act with speed to cease Defendants' operation of the Elbow Room if Plaintiffs did not take action themselves." The trial court then detailed the evidence that should have raised serious questions in Pierson's mind about The Elbow Room's compliance with the code. While the court considered this evidence in determining whether Chapman had good cause to believe his allegations were well-founded, it is also relevant to whether Pierson had a reasonable basis to support his position.
 {¶ 33} Evidence in the record indicates that 128 W. Union St. used to contain a laundry facility prior to the opening of The Elbow Room. However, in their application the owners of The Elbow Room indicated that only $2,000 worth of improvements were intended. Moreover, according to the testimony, establishments in B-1 zones are required to have parking spaces. The owners' application, however, made no provision for parking spaces.
 {¶ 34} A review of The Elbow Room's liquor license would have cast serious doubt on whether The Elbow Room was in compliance with the zoning code. While the zoning code prohibited entertainment in restaurants located in B-1 zones, The Elbow Room's liquor license required it to provide entertainment. Moreover, in their narrative statement to the Board of Zoning Appeals following Pierson's July 2001 letter, the owners of The Elbow Room admitted that they provide entertainment, stating: "The business serves food at all hours of operation, but on certain evenings, the business will serve more alcoholic beverages with entertainment."
 {¶ 35} Finally, Pierson testified that he spoke with Adelle Hanson from the Athens City/County Health sometime between May 1, 2001 and June 6, 2001. According to his testimony, Ms. Hanson informed him that The Elbow Room was only licensed to serve hotdogs, frozen prepared pizzas, popcorn, bagged snacks, and beverages. Moreover, a visit to The Elbow Room would have revealed that the "restaurant" had no kitchen.
 {¶ 36} Despite the availability of this evidence, Pierson did not contact The Elbow Room to request more information about its services until July 2001, two months after Chapman first voiced his complaints. Given the fact that a review of the liquor license alone would have indicated a probable code violation, the trial court could have reasonably questioned whether Pierson had a reasonable basis to support his position.
 {¶ 37} Accordingly, we conclude the trial court did not abuse its discretion in awarding Chapman attorney's fees. The parties' agreed judgment entry resolved the merits of the case, making it unnecessary for the court to determine whether mandamus was appropriate. Moreover, the agreed entry constituted a final judgment in Chapman's favor. Thus, after the parties filed their agreed entry, the only issue left for the court to determine was whether it should permit Chapman to recover his attorney's fees. Because the evidence in the record supports a finding that Chapman's action provided a public benefit, we cannot say that the court's award of attorney's fees is unreasonable, arbitrary, or unconscionable. We conclude Pierson's first three assignments of error have no merit.
 {¶ 38} In his fourth assignment of error, Pierson contends the court violated Loc.R. 20.01(B) and (C) of the Court of Common Pleas of Athens County, General Division, when it granted Chapman's request to convert the pre-trial conference into an evidentiary hearing.[3] He contends the conversion hindered his defense since he was unable to conduct discovery. According to Pierson, he expected the court to establish a discovery schedule at the pre-trial conference.
 {¶ 39} Pierson never raised this argument in the trial court. While he did oppose converting the pre-trial conference into an evidentiary hearing, he never argued that the conversion would violate local court rules. Arguments that are not raised in the trial court are waived and may not be asserted on appeal. Stores Realty Co. v. Cleveland
(1975), 41 Ohio St.2d 41, 43, 322 N.E.2d 629; Van Camp v. Riley (1984),16 Ohio App.3d 457, 463, 476 N.E.2d 1078; Lippy v. Soc. Natl. Bank
(1993), 88 Ohio App.3d 33, 40, 623 N.E.2d 108.
 {¶ 40} Moreover, even if we were to find that the trial court erred in converting the pre-trial conference into an evidentiary hearing, we fail to see how doing so prejudiced Pierson. Pierson contends the conversion denied him the opportunity to conduct discovery. However, both Civ.R. 33, governing interrogatories, and Civ.R. 34, governing requests for production of documents, provide discovery methods that are available after the commencement of the action and without leave of the court. There is nothing in the record to indicate that Pierson availed himself of these discovery devices in the months prior to the evidentiary hearing. Thus, any prejudice Pierson suffered was of his own doing, and was unrelated to the court's decision to convert the pre-trial conference into an evidentiary hearing. Accordingly, we conclude that Pierson's fourth assignment of error has no merit.
 {¶ 41} In his fifth assignment of error, Pierson challenges five separate evidentiary rulings the trial court made during the hearing.
 {¶ 42} Four of the evidentiary rulings Pierson challenges concern the trial court's decision to permit a particular line of questioning or a particular witness's testimony. Pierson contends the court expanded the scope of the hearing beyond the complaint and allowed irrelevant evidence to be presented during the hearing.
 {¶ 43} The admission or exclusion of evidence rests in the sound discretion of the trial court. State v. Sage (1987), 31 Ohio St.3d 173,510 N.E.2d 343, paragraph two of the syllabus. In order to be admissible, evidence must be relevant. Evid.R. 402. Evid.R. 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."
 {¶ 44} First, Pierson contends the court expanded the scope of the hearing beyond the complaint when it allowed Chapman to inquire about the initial issuance of the zoning certificate. He contends the complaint does not allege that the initial issuance was improper.
 {¶ 45} Although the complaint does not specifically allege that the initial issuance was improper, it does imply that the certificate was invalid from the time of issuance. In his complaint, Chapman states that the owners of The Elbow Room "obtained a zoning certificate under the pretext of operating a restaurant." He also notes that "[n]o `restaurant' or `café' has ever been licensed by the Health Department at the aforementioned location." In his amended complaint, Chapman states that the owners of The Elbow Room obtained their zoning certificate by fraudulent pretenses. Moreover, as the court recognized, whether the initial issuance of the certificate was proper is relevant in determining, under R.C. 733.61, whether Chapman "had good cause to believe that his allegations were well founded." Accordingly, we conclude the trial court did not abuse its discretion when it permitted questions related to the initial issuance of the zoning certificate.
 {¶ 46} Second, Pierson contends the court erred in permitting questions about the employment of the sons of the Safety-Service Director by the owners of The Elbow Room. At the hearing, Pierson testified that he is supervised by and reports to the Safety-Service Director for the City of Athens. He contends the line of questioning was not relevant to the issue before the court.
 {¶ 47} Assuming, without deciding, that the trial court erred in admitting this evidence, the error is harmless. See Civ.R. 61. In its journal entry, the trial court explicitly rejected Chapman's assertion that the Safety-Service Director influenced Pierson's actions with respect to The Elbow Room. The court stated: "While the Court cannot accept their argument that Assistant Service Director Key was in any way influencing the actions of Mr. Pierson, otherwise, it finds their reservations credible." Thus, the court's journal entry indicates that this line of questioning did not influence its decision. Therefore, any error in the admission of this evidence is harmless error.
 {¶ 48} Third, Pierson contends the trial court erred in allowing evidence of various calls the police received regarding The Elbow Room. He contends evidence of the police calls regarding The Elbow Room was not relevant to the issue before the court.
 {¶ 49} During the hearing, Chapman questioned the Safety-Service Director about reports of fights and various noise complaints the police had received regarding The Elbow Room. Chapman also questioned the Safety-Service Director about an alleged incident of alcohol poisoning that occurred at the bar. Pierson objected to this line of questioning. The trial court overruled Pierson's objection, finding that the evidence was relevant to whether The Elbow Room presented an urgent situation requiring action.
 {¶ 50} Chapman brought his complaint regarding The Elbow Room to Pierson's attention in early May 2001. Pierson did not contact the owners of The Elbow Room until July. Some of the incidents Chapman questioned the Safety-Service Director about, including the alleged alcohol poisoning, occurred in the time between Chapman's letter to Pierson and Pierson's letter to the owners of The Elbow Room. Because the police calls regarding The Elbow Room are relevant to whether prompt action on Pierson's part was necessary, they are relevant to whether Chapman had good reason for bringing an action in mandamus. Moreover, evidence of the criminal activity at The Elbow Room is also relevant in determining whether Chapman provided a public benefit by bringing his mandamus action. Accordingly, the trial court did not abuse its discretion when it admitted evidence relating to criminal activity at The Elbow Room.
 {¶ 51} Fourth, Pierson contends the court erred in permitting the testimony of Adelle Hanson from the Athens City/County Health Department. He contends her testimony is irrelevant because the Code Enforcement Office is not required to enforce the rules of the Ohio Department of Health or the Athens City/County Health Department.
 {¶ 52} Ms. Hanson's testimony is relevant to a determination of whether Chapman provided a public benefit by bringing his mandamus action. In addition, her testimony is relevant to determining if Pierson had a reasonable basis to support his position. Ms. Hanson testified that The Elbow Room had no kitchen and was only licensed to sell hotdogs, nachos, popcorn, and chips. She testified that despite The Elbow Room's limited food service license, she learned that the bar was offering buffet style foods. She also testified about the health concerns associated with offering buffet style food to the public. Because Ms. Hanson's testimony is relevant to whether Chapman's action provided a public benefit, the trial court did not abuse its discretion in admitting the testimony.
 {¶ 53} In his fifth argument under this assignment of error, Pierson argues the trial court erred in allowing Chapman to re-open his case to present the testimony of Charles Miller, a code enforcement officer for the City of Athens. He also argues the trial court indicated that it would view the testimony as a proffer but then relied on the testimony in its journal entry. Finally, Pierson argues the testimony should not have been admitted because it is irrelevant.
 {¶ 54} The decision to permit a party to re-open his case is within the sound discretion of the trial court and will not be reversed absent an abuse of discretion. Ketcham v. Miller (1922), 104 Ohio St. 372,378, 136 N.E. 145; Pyle v. Pyle (1983), 11 Ohio App.3d 31, 37,463 N.E.2d 98.
 {¶ 55} Chapman rested his case at the end of the January 30, 2002, evidentiary hearing. When the parties reconvened on March 1, 2002, Chapman requested leave to re-open his case to present the testimony of Mr. Miller. It appears that Chapman informed Pierson of his intention to re-open his case because at the hearing, Pierson's counsel indicated that he was aware of one of the issues Chapman intended to explore with Mr. Miller. After Chapman rested his case again, Pierson indicated that he had submitted his stipulation and had no further evidence to present. The parties then presented their closing arguments.
 {¶ 56} Pierson does not indicate what prejudice he suffered as a result of the court's decision allowing Chapman to re-open his case. He does not claim that he was denied an opportunity for effective cross-examination. Nor does he claim that he was denied the opportunity to present evidence rebutting Mr. Miller's testimony. Thus, we conclude the trial court did not abuse its discretion when it allowed Chapman to re-open his case and present Mr. Miller's testimony.
 {¶ 57} Pierson also contends the court indicated that it would treat Mr. Miller's testimony as a proffer but then relied on the testimony in making its decision. At the hearing, the court stated: "And if it ends up that you're right, Mr. Biddlestone, or the Court agrees with you that it's right and it's irrelevant, then we'll consider the testimony in the nature of a proffer." Thus, the transcript indicates that the court agreed to treat the testimony as a proffer if itdetermined the testimony was irrelevant. Clearly, the court found the testimony to be relevant since it relied on Mr. Miller's testimony in making its decision.
 {¶ 58} Finally, Pierson argues the court erred in admitting Mr. Miller's testimony because the testimony is irrelevant. Mr. Miller is the code enforcement officer who reviewed the owners' application to open The Elbow Room. He testified that the owners indicated on the application that the establishment was a restaurant and that he added the word "bar", which Pierson later crossed out. According to Mr. Miller's testimony, the owners did not object when he added the word "bar" to the application. He also testified that he believed the establishment was a bar rather than a restaurant. Moreover, Mr. Miller testified that establishments in a B-1 zone are required to have parking spaces. He testified that the number of parking spaces an establishment is required to have depends upon the establishment's square foot measurement. The Elbow Room's application, however, did not provide for any parking spaces. A review of Mr. Miller's testimony indicates that it is relevant in determining if Pierson had a reasonable basis to support his position. Thus, the trial court did not abuse its discretion in admitting the testimony.
 {¶ 59} We conclude the trial court did not abuse its discretion in admitting testimony regarding the initial issuance of the zoning certificate and the police calls to The Elbow Room. In addition, the trial court did not abuse its discretion by allowing Ms. Hanson's testimony or by allowing Chapman to re-open his case to present Mr. Miller's testimony. Finally, assuming the trial court erred in permitting questions regarding the Safety-Service Director's sons' employment at The Elbow Room, we conclude the error was harmless since the court, in its journal entry, explicitly rejected Chapman's assertion of improper influence. Accordingly, Chapman's fifth assignment of error is overruled and the judgment of the trial court is affirmed.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellees recover of Appellants costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Athens County Common Pleas Court to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Evans, P.J.: Dissents with Attached Dissenting Opinion.
Kline, J.: Concurs in Judgment and Opinion.
[1] The trial court's judgment entry spells Mr. Pierson's first name Stephen. However, correspondence contained in the record indicates that his first name is spelled Steven.
[2] After Pierson filed his answer, Chapman filed a motion to strike the answer as being untimely and a motion for default judgment. In November 2001, the trial court overruled Chapman's motions.
[3] Loc.R. 20.01 establishes a case management plan for civil cases. According to Loc.R. 20.01(B), the trial court shall hold the first status conference approximately 90 days after the case is filed. Under Loc.R. 20.01(C), the court is required to hold the first pre-trial conference no more than 270 days after the case is filed.